## IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARLENE BLACK, | ) | |
|       Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Case No.  05-01689 |
| | ) | |
| HEALTHCARE SERVICES GROUP, INC. | ) | |
|       Defendant. | ) | |

### MEMORANDUM OPINION

I.  INTRODUCTION

      This action is an age discrimination case filed under the Age Discrimination in Employment Act ("ADEA"),  29 U.S.C. § 623(a)(1), and the Pennsylvania Human Relations Act ("PHRA"),  43 Pa. Cons. Stat.Ann. § 955(a).  Plaintiff, a former employee of Defendant Healthcare Services, alleges that she was fired due to Defendant discriminating based on her age in violation of the aforementioned statutes.  Plaintiff seeks injunctive relief, compensatory damages, and costs. Docket No. 14, at 4.

      Pending before this Court is Defendant's Motion for Summary Judgment. Docket No. 18. This Court has reviewed and examined the motion and all memoranda and exhibits that the parties have filed with respect to the motion.  In addition, this Court heard limited argument on the motion at a status conference held on July 30, 2007.  After careful consideration, and for the reasons set forth below, this court will DENY Defendant's motion.

II. FACTUAL BACKGROUND

The relevant facts stated herein have been taken from the parties' submissions. Unless otherwise stated, these facts are not in dispute.

From January 24, 2005 until she was fired on February 4, 2005, Plaintiff, Marlene Black, was employed as a housekeeper at Haven Crest Nursing Center ("Haven Crest") for Defendant, Healthcare Services Group, Inc. Docket No. 20, at 5, 10. Defendant had a service agreement with Extendicare Health Facilities, Inc. to provide housekeeping and laundry services to Haven Crest. *Id.* at 4. Although Plaintiff had previously worked at the Haven Crest facility, she was only employed by Defendant for two weeks at the time she was discharged.[1] Docket No. 24, at 3. At all times relevant to Plaintiff's complaint, Defendant also employed Account Manager Aaron Cooper and District Manager Brett Whittick at Haven Crest. Docket. No. 20, at 5.

Defendant's disciplinary policy required that all employee disciplinary actions be documented using a form known as the Employee Warning Notice ("EWN"). *Id.* at 6. Employees who were disciplined using the EWN form were required to sign the form acknowledging that the EWN was reviewed with them. *Id.* Under the signature line on the form appeared the statement, "[m]y signature indicates only that I have read this EWN and I have been given a copy. My signing does not mean I agree with it. I understand that my refusal to sign constitutes insubordination for which I will be discharged." *Id.*

During the course of her two week employment with Defendant, Plaintiff was issued several EWN's. *Id.* at 9. First, on February 2, 2005, Plaintiff was issued an EWN for losing three sets of

---

[1] Plaintiff worked for the Haven Crest facility under another employer until she was placed on medical leave. Docket No. 24, at 3 n.1. She obtained a medical release to return to work in October 2004. *Id.* at 3 n.2. Plaintiff alleges that she did not know there was a change in management until she returned. *Id.* She further alleges that Defendant attempted to block her return until her union to intervened. *Id.* Plaintiff began her work for Defendant on January 24, 2005. *Id.*

2

keys. *Id.* Plaintiff signed the EWN as required, but she disagreed with the charge and wrote "I did not lose 3 sets of keys" on the form. Docket No. 22, at 21. Next, during a meeting on February 4, 2005, Plaintiff was issued an additional five EWNs.[2] Docket No. 20, at 9. During the meeting, she was asked by then District Manager Whittick several times to sign the EWNs, but she refused. Docket No. 21, at 19-20. Mr. Whittick told Plaintiff that her signature was only to acknowledge that she had read the EWNs and not that she agreed with them. Docket No. 20, at 9. Mr. Whittick also pointed out to Plaintiff the statement on the EWN form that informed employees if they refused to sign the form they would be discharged. *Id.* Despite this warning, Plaintiff refused to sign the five EWNs. *Id.* At the conclusion of the meeting, Plaintiff was given a sixth EWN that formally discharged her for refusal to sign EWNs. *Id.* at 10.

Defendant claims that the Plaintiff was discharged because she refused to sign the EWNs.[3] *Id.* at 11-12. However, during the course of the February 4 meeting, the Plaintiff claims Mr. Whittick made discriminatory comments about her age before he discharged her. Docket No. 23, at 3. She alleges that Mr. Whittick told her that she was "probably too old to perform the job" and that "[s]he is 58 years old and kind of set in her ways." *Id.* Michael Jurcevich, Plaintiff's union representative, was present during the meeting where Plaintiff was discharged. Docket No. 27, at 44. In his deposition testimony, Mr. Jurcevich confirms that Mr. Whittick made the alleged

---

[2] The five EWN's were for the following:
    a. Failure to clean bowel movement off of a toilet on January 28, 2005, *See* Docket No. 22, at 23;
    b. Failure to clean her assigned areas on February 2, 2005, *id.* at 25;
    c. Failure to clean bowel movement off of a toilet on February 2, 2005, *id.* at 27;
    d. Failure to change mop water as instructed before mopping a room on February 3, 2005, *id.* at 29; and
    e. Failure to lock her lock box and secure her chemical as instructed on February 4, 2005, *id.* at 31.

[3] In her brief in opposition to Defendant's motion for summary judgment, Plaintiff notes that Defendant's reason for firing her changed several times. Docket No. 24, at 7. First, Plaintiff's formal discharge notice says that she was fired for "insubordination, refusal to sign EWNs." *Id.* at 9. Next, in response to Plaintiff's EEOC age discrimination charge, Mr. Whittick said "Black was discharged due to her performance and acts of insubordination as stated in the ... EWN's." *Id.* In its answer to the complaint, Defendant states that "Black was discharged due to her unsatisfactory performance, as well as her refusal to sign the receipt portion of five [EWN's]." *Id.* at 10.

discriminatory comments.  *Id.* at 50.  Mr. Whittick, however, denies that he made any such comment.  Docket No. 20, at 7.  Account Manager Cooper, who was also present at the February 4 meeting, similarly denies that the alleged statements were ever made.  *Id.*

Although the parties agree that Mr. Whittick was the decision maker in discharging the Plaintiff, in Plaintiff's Statement of Material Facts Precluding Summary Judgment, Docket No. 25, Black notes that there are inconsistencies in the witnesses' testimony as to what role Regional Manager Brian Mejia played in the decision.  The Defendant, in response to an interrogatory, stated that Mr. Mejia had reviewed and approved the discharge decision.  Docket No. 25, at 17.  Mr. Mejia, however, claims that although he was made aware of the decision after it was made, he was not directly involved in Plaintiff's termination.  *Id.*  In his deposition testimony, Mr. Whittick claims that Mr. Mejia made sure he followed the company procedures when he fired Plaintiff.  *Id.*  Mr. Mejia, on the other hand, testified that he did not perform any checks to make sure that Mr. Whittick followed Defendant's procedures.  *Id.*  Finally, Defendant's in-house counsel, Timothy McCartney, testified that Mr. Mejia gave him the reasons for which Plaintiff was discharged.  *Id.* at 18-19.  However, Mr. Mejia denied that Mr. McCartney ever asked him to identify the reasons for Plaintiff's termination.  *Id.* at 19.

III.  STANDARD OF REVIEW

Summary judgment shall only be issued "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).  Summary judgment is appropriate if, after discovery, a party fails to prove an essential element of the claim on which it will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In a motion for summary judgment, "a district court

should resolve *all inferences, doubts and issues of credibility against the moving party*." *Smith v. Pittsburgh Gage & Supply Co.* 464 F.2d 870, 874 (3d Cir.1972) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144 (1970)) (emphasis added). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings and present evidence to show that there is a genuine issue for trial. *Celotex,* 477 U.S. at 324.

IV.  DISCUSSION

There are two ways in which a plaintiff can prove age discrimination.[4] First, a plaintiff can present direct evidence to prove discrimination under the mixed motives theory of liability developed in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).[5] Second, a plaintiff can present circumstantial evidence to prove discrimination under the burden shifting theory of liability developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Macon v. Kings Family Restaurant*, No. 06-300, 2007 WL 1366789, *3, n.3 (W.D.Pa. May 7, 2007). Here, the parties agree that there is sufficient direct evidence of discrimination in this case such that the *Price Waterhouse* analysis applies.

A.  Price Waterhouse Analysis

*Price Waterhouse* established a two part analysis for a court to examine discrimination cases. First, a plaintiff must present sufficient direct evidence to show that age was a motivating factor in the employment decision. Next, once the plaintiff presents this direct evidence, both the burden of production and the burden of persuasion shift to the employer. The burden of persuasion

---

[4] The analysis under the ADEA and PHRA is essentially the same. See *Kelly v. Drexel University*, 94 F.3d 102, 105 (3d Cir.1996); See also *Macon v. Kings Family Restaurant*, No. 06-300, 2007 WL 1366789, *3, n.3 (W.D.Pa. May 7, 2007). Therefore, for the purpose of this opinion, the general discrimination analysis will apply equally to both statutes.

[5] Congress superceded the *Price Waterhouse* test with the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e-2, 2000e-5(f). However, the Third Circuit continues to apply the *Price Waterhouse* test to ADEA cases. *Glanzman v. Metropolitan Management Corp.*, 391 F.3d 506, n.3 (3d Cir. 2004).

is a heavier burden than the burden of production under the *McDonnell Douglas* analysis in which the defendant must simply set forth a legitimate non-discriminatory reason for the discharge to satisfy its burden.  Under Price Waterhouse, an employer must present sufficient evidence to "leave no room for the fact finder to infer that the employer in fact discriminated or retaliated against the plaintiff" to satisfy the burden of persuasion. *See Frobose v. American Sav. and Loan Ass'n of Danville*, 152 F.3d 602, 615 n.12 (7th Cir. 1998); *See also Burns v. Gadsden State Community College,* 908 F.2d 1512, 1519 (11th Cir.1990).  Therefore, to succeed on its motion for summary judgment, Defendant must prove that a rational jury would find that Defendant would have discharged Plaintiff Black independent of the alleged age discrimination.

1.  Plaintiff's Direct Evidence

For purposes of the motion for summary judgment, this Court must assume that District Manager Whittick made the alleged discriminatory statements that the Plaintiff was "too old to perform the job" and that "she was 58 and kinda set in her ways" during the Feb 4, 2005 meeting when he discharged her.  Docket No. 25, at 9.  The Third Circuit has held that "statements of a person involved in the decision making process that reflect a discriminatory or retaliatory animus of the type complained of in the suit" are sufficient direct evidence to place a claim within the *Price Waterhouse* analysis.  *Fakete v. Aetna, Inc.* 308 F.3d 335, 339 (3d Cir. 2002) ((quoting *Ostrowski v. Atlantic Mut. Ins. Cos.*, 968 F.2d 171, 182 (2d Cir.1992)).  Here, Mr. Whittick was the decision maker who decided to discharge the Plaintiff.  Also, Plaintiff alleges the discriminatory statements were made by Mr. Whittick in the very meeting in which Plaintiff was discharged.[6]  Therefore,

---

[6] Although Defendant disputes whether the discriminatory comments were made, and, if they were made, whether the comments were made in the meeting where Plaintiff was discharged, this Court must resolve all inferences and doubts in favor of Plaintiff for the purposes of this motion for summary judgment.  *See Smith*, 464 F.2d at 874.  Therefore, this Court will accept the allegation that the discriminatory comments were made in the meeting in which Plaintiff was discharged.

under *Fakete*, Mr. Whittick's alleged statements are sufficient direct evidence of discrimination to shift the burden of persuasion to Defendant under the *Price Waterhouse* analysis.

2. Defendant's Legitimate Reason for Discharging Plaintiff

Independent of the alleged age discrimination, Defendant claims that it would have fired Plaintiff for not signing the EWN forms she was given in the February 4, 2005 meeting.[7] Based on the language on the form, it is clear that refusing to sign the forms would result in discharge. The Defendant relies on *Glanzman v. Metropolitan Management Corp.*, 290 F. Supp. 2d 571 (E.D. Pa. 2003), and *Barbee v. Southeastern Pennsylvania Transportation Authority*, No. 04-4063, 2006 U.S. Dist. LEXIS 50314 (E.D. Pa. July 24, 2006), to show that even when a court finds direct evidence of discrimination, it should still grant summary judgment in favor of the employer when the employer shows that it relied on an independent reason to terminate an employee.

The instant case, however, is distinguishable from *Glanzman* and *Barbee*. In *Glanzman*, the plaintiff employee had a history of problems with her employer that were more egregious than refusing to sign a disciplinary form. The employer alleged that the plaintiff was fired because she had poor job performance, she violated numerous company policies including accepting over $1,000 in collect phone calls and letting her granddaughter use the company internet, and she attempted to steal a company dishwasher. *Glanzman,* 290 F.Supp.2d at 580. Most importantly,

---

[7] Defendant places great emphasis on its EWN form, which was revised on March 1, 2004, to state that an employee who refuses to sign the form will be discharged for insubordination. Docket No. 22, at 4. However, Plaintiff claims that she did not receive any training on the Defendant's policies. Docket No. 27, at 11. Moreover, Plaintiff claims that she was told by her union president, Mike Jurcevich, that she should not have signed a previous EWN with which she disagreed. Even though her employer told her she had to sign the EWN, and the form advised that she would be discharged for not signing, Plaintiff claims that this advice from Mr. Jurcevich is the reason she refused to sign the EWNs on February 4, 2005. *Id.* at 15.

Although, not raised by the parties, the Court questions *sua sponte* the applicability of the Older Workers Benefit Protection Act, Pub. L. No. 101-433, 104 Stat. 978, to the EWN procedure as it might relate to an older worker such as Plaintiff Black.

*Glanzman* is distinguishable from this case because the alleged discriminatory comments were made by the employer ten months before the employee was discharged. *Id.* at 579. Here, Plaintiff maintains that Mr. Whittick made the alleged discriminatory comments at the very time he discharged Plaintiff during the February 4, 2005 meeting. It is logical that a jury would conclude that an employer can properly discharge an employee who had poor performance and who, additionally, was attempting to steal a dishwasher, even considering the fact that the employer may have revealed discriminatory animus with comments made ten months before the discharge. However, it does not necessarily follow that a jury would conclude that an employer should automatically fire an employee for refusing to sign a disciplinary form when, as in the instant matter, the decision maker made discriminatory statements in the very meeting in which the employee was being discharged.

   The facts in *Barbee* are also distinguishable from the instant case. In *Barbee*, the plaintiff employee was injured in a vehicle accident while working as a bus driver. *Barbee,* 2006 U.S. Dist. LEXIS 50314, at *13. After taking 271 sick days, the employee submitted a note from his personal doctor to the employer's doctor that said he could return to work, but he could not drive commercially. Because the employee, based on the note, could not return to his previous position, the employer's doctor placed him on the medically disqualified list. *Id.* at *14. During the course of the employee's physical examination, the employer's doctor also made some discriminatory statements. He told the employee, "you're over 50, you're disabled." *Id.* at *12. The Court found the employee's own evidence proved that he was incapable of doing the job and that the employer would have placed him on the medically disqualified list absent the discriminatory comments. *Id.* at *14. Unlike the employee in *Barbee*, Plaintiff Black has not submitted evidence that shows she is no longer capable of doing her job. In fact, she was released to return to work.

Outside of the unique facts in *Glanzman* and *Barbee*, Courts have been reluctant to grant summary judgment in mixed motive cases. *See Alder v. Madigan,* 939 F.2d 476, 479 (7th Cir. 1991) ("mixed motives" situations are ordinarily not grist for the summary judgment mill); *Burns v. Gadsden State Community College*, 908 F.2d 1512, 1519 (11th Cir.1990) ("at the summary judgment stage, an employer can prevail on this issue only if the record evidence that its employment decision was not based on discrimination is so strong that a reasonable trier of fact must so conclude").

Viewing the evidence in the light most favorable to Plaintiff, Defendant has not met the substantial burden of proving that a jury would find that Defendant would have discharged Plaintiff independent of the alleged discrimination. In fact, Defendant's evidence of Plaintiff's poor performance and failure to sign the EWNs is undercut by the reported discriminatory comments made by Brett Whittick at the time he fired her. The alleged timing of the statements is a crucial factor in the instant matter, as is the claim that the statement was heard by a third party, Mr. Jurcevich, Plaintiff's union representative.

In addition to the discriminatory statements made by District Manager Whittick, there is other evidence that could lead a jury to conclude that Defendant's proffered reason of failure to sign EWNs was not what actually motivated Defendant to discharge Plaintiff Black. As already stated, in the time since Plaintiff was discharged, Defendant has offered several reasons for her discharge during the course of this litigation including insubordination, poor performance, and failure to sign EWNs. *Supra* at 3 n.3. Although these reasons are not mutually exclusive, they, along with their timing, raise questions about their validity as defenses to this claim. In addition, the testimony of Mr. Whittick, Mr. Mejia, and Mr. McCarney regarding the involvement of Mr. Mejia in Plaintiff's discharge has also been inconsistent and contradictory. *Supra* at 4. Hence, the credibility of all

three of these witnesses is called into question. This court, in considering this motion for summary judgment, must resolve issues of credibility in favor of the Plaintiff. *See Smith*, 464 F.2d at 874.

Finally, although the EWN form clearly states that any employee who refuses to sign it will be discharged for insubordination, the record evidence reveals Defendant has never discharged another employee for this reason. Defendant's evidence as to why Plaintiff was discharged leaves room for a jury to conclude that Defendant in fact discharged Plaintiff because of her age. Whether discrimination was a substantial factor in the discharge, or whether the termination was for legitimate reasons such as poor performance or insubordination, is an issue that should best be resolved by a jury.

V. CONCLUSION

For the reasons stated above, it is hereby ordered that Defendant's motion for summary judgment be DENIED. An appropriate order follows.

//s//Nora Barry Fischer
Nora Barry Fischer
United States District Judge

Dated: August 13, 2007

cc:   All counsel of record